Alfred R. Fabricant (AF8255)
Lawrence C. Drucker (LD9423)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
afabricant@winston.com
ldrucker@winston.com

Attorneys for Plaintiff Arbitron Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| ARBITRON INC. | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 11 CIV 8311 |
| MAGIC BROADCASTING LLC and MAGIC BROADCASTING ALABAMA LICENSING LLC, | ) |
| Defendants. | ) |

JUDGE COTE

## COMPLAINT

Plaintiff, Arbitron Inc. ("Arbitron"), by and through its undersigned attorneys, as and for its Complaint against Defendants Magic Broadcasting LLC and Magic Broadcasting Alabama Licensing LLC, alleges as follows:

### NATURE OF ACTION

1. This is an action for copyright infringement and breach of contract. Plaintiff Arbitron is one of the nation's leading firms in the field of audience measurement, and has been for more than 50 years. Arbitron's claims in this action result from the Defendants' continued use of Arbitron's copyrighted reports after the expiration of a subscription agreement that

DC:693095.2

entitled one or more of the Defendants to receive and use those reports. As a result of this improper use, Defendants have violated Arbitron's copyrights and breached their subscription agreement with Arbitron.

## THE PARTIES

2. Arbitron Inc. is a Delaware corporation qualified to do business in the State of New York. Arbitron's principal place of business is 9705 Patuxent Woods Drive, Columbia, Maryland, 21046. Arbitron has a place of business in this judicial district at 575 Fifth Avenue, New York, New York 10017.

3. On information and belief, Magic Broadcasting LLC ("Magic Broadcasting") is a Florida limited liability company with its principal place of business at 7106 Laird St., Panama City Beach, Florida, 32408.

4. Magic Broadcasting was formerly known as Styles Media LLC. A name change was registered with the Alabama Secretary of State on or about July 21, 2006. A copy of the Alabama Secretary of State's current record for Magic is attached hereto as Exhibit 1.

5. Upon information and belief, Magic Broadcasting Alabama Licensing LLC ("Magic Licensing") is an Alabama limited liability company with its principal place of business at 285 N Foster St., 7th Floor, Dothan, Alabama 36303. Upon information and belief, Magic Licensing is a related entity or affiliate of Magic Broadcasting.

6. Magic Licensing was formerly known as Styles Alabama Licensing LLC. A name change was registered with the Alabama Secretary of State on or about June 21, 2006. A copy of the Alabama Secretary of State's current record for Magic Licensing is attached hereto as Exhibit 2.

7. Together, Magic Broadcasting and Magic Licensing (collectively, "Magic") own, control and operate radio stations including, but not limited to, stations in the Dothan, Alabama market. Magic Licensing holds the FCC broadcast license for radio stations owned and operated by Magic including, but not limited to, WTVY-FM, WKMX-FM, WJRL-FM, WBBK-FM, WXUS-FM and WQLS-FM.

## JURISDICTION AND VENUE

8. On or about August 17, 2005, Magic (then Styles Media LLC) entered into three agreements with Arbitron: (1) a "Station License Agreement to Receive and Use Radio Listening Estimates" (the "License Agreement"); (2) an "Arbitron Radio Station Supplementary Services License Agreement" (the "Supplementary Services Agreement"); and (3) an "Arbitron Radio Station License Agreement for TAPSCAN Services" (the "TAPSCAN Agreement"). On or about September 30, 2005, Styles Media LLC and Arbitron signed an addendum to the earlier agreements. On or about August 23, 2006, Magic signed an "Agreement of Assignment of License Agreement" in which Magic "agree[d] to and … accept[ed] the Assignment of the Arbitron License Agreement(s)." The three agreements, addendum, and assignment are attached hereto as Exhibits 3, 4, 5, 6 and 7 respectively.

9. Magic consented to the jurisdiction of this Court and expressly selected this District as the venue in which to litigate disputes. Paragraph 15(b) of the License Agreement (Exh. 3) is illustrative and provides in pertinent part:

> This agreement shall be deemed to be an agreement made under, and to be construed and governed by, the laws of the State of New York, exclusive of its choice of law rules. The parties expressly agree that any and all disputes arising out of or concerning this Agreement or the Arbitron Data or Reports licensed hereunder shall be litigated and adjudicated exclusively in State and/or Federal Courts located in either the State of New York or the State of Maryland, at Arbitron's option, and each party consents to and submits to both such jurisdictions.

This clause is expressly incorporated in Exhibit 4 at ¶ 1(a). Similar clauses consenting to the jurisdiction of this Court are found in Exhibit 5 at ¶ 10(b). The addendum (Exhibit 6) does not modify this clause and states, following ¶ 10, that "[a]ll other terms and conditions of the License Agreements shall remain in full force and effect."

10. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1338(a) in that one or more of the claims herein arise under the Copyright Laws of the United States, 17 U.S.C. § 101, *et seq*. This Court has supplemental jurisdiction over all remaining claims pursuant to 28 U.S.C. § 1367 in that those claims are substantially related to the copyright claim and form part of the same case or controversy.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) in that both Defendants are subject to personal jurisdiction in this District and have expressly agreed that venue in this District is proper.

## BACKGROUND

12. Arbitron is one of the nation's leading firms in the field of audience measurement, and has been for more than 50 years. At all times material to this action, Arbitron has been engaged in the business of, among other things, providing reports and information concerning audience measurement of radio listening within designated survey areas throughout the United States and the world. For example, Arbitron collects radio audience listening data from which it produces estimates and reports (the "Arbitron Reports").

13. Each Arbitron Report created by Arbitron is, and has been, at all times material to this action, an original work of authorship uniquely created by Arbitron's own skill, expertise, opinion, labor and judgment. Arbitron holds copyrights in the Arbitron Reports, registered with

DC:693095.2

the United States Copyright Office. At least the following registrations are relevant to this action:

    A.    Station Audience Estimates – Survey Respondent Diarybase – GP2F1 – Fall 2008 (October, November and December 2008) Group 12;

    B.    Station Audience Estimates – RM3M4 – (Fall 2008 Revision including Estimates for October, November and December-2008, Groups 12 and 13;

    C.    Station and Audience Estimates – RM3M4 – Spring 2009 (April, May, June) Group 1;

    D.    Survey Respondent Diarybase – GP2F1 – Spring 2009 (April, May, June) Groups 1 and 2;

    E.    Station Audience Estiamtes – GP2F1 –Fall 2009 (October, November, December 2009) Groups 1, 2 & 3; and

    F.    Survey Respondent Diarybase – GP2F1 – Fall 2009 (October, November, December 2009) Groups 4, 5 and 6.

Registration Forms TX for the above listed works are attached collectively as Exhibit 8 hereto.

    14.    Arbitron Reports, research services, and other services are licensed to subscribers pursuant to the terms of written agreements. The subscribers are granted limited licenses to use the Arbitron Reports, which remain at all times the sole and exclusive property of Arbitron.

    15.    Pursuant to the such agreements, Arbitron granted Magic a limited license to use the Arbitron Reports and other information and services in exchange for license fees to be paid in periodic installments as specifically provided in the agreements. *See* Exhibits 3-7. Under this limited license, Magic was granted limited rights to use Arbitron Reports "only for the Term of [the Station License Agreement]." (Exh. 3, ¶ 7.)

16. The term of these agreements began April 1, 2005 and ended March 31, 2010. At the expiration of the term of these agreements, Magic elected not to renew them, and thus, Magic's limited license to use any Arbitron Reports ceased.

17. On or about July 29, 2010, Arbitron sent Magic a letter advising Magic that its license agreements with Arbitron had expired on March 31, 2010, and that Magic's limited license to use any Arbitron Reports had ceased as of July 23, 2010. The letter detailed Magic's obligations with respect to the expired agreements, including that all Arbitron Reports should be destroyed. A copy of this letter is attached hereto as Exhibit 9.

18. Upon information and belief, on or about August 8, 2011, at 8 p.m EST, one of Magic's stations in the Dothan, Alabama market, WKMX-FM, aired a station identifier stating, *inter alia*, "Thanks for making us the most listened to radio station in the Wiregrass." Upon information and belief, this reference was to WKMX-FM's purported ranking in an Arbitron Report. The only way WKMX-FM could have made such a representation of rank in the market was through wrongful use of Arbitron Reports.

19. Upon information and belief, on or about September 22, 2011, All Access, a website devoted to radio industry and music news, published an article quoting Billy Sexauer, WKMX-FM's program director and host of one of its morning shows. The article quotes Sexauer as stating that, among other things, ". . . she and I have taken the morning show from 7th in the market [Dothan, AL] to 1st 18-49 women." A copy of this article is attached hereto as Exhibit 10.

20. Upon information and belief, Sexauer was referencing an Arbitron Report that Magic no longer had a right to use because the license had expired. Alternatively, Sexauer was referring to an Arbitron Report issued after the expiration of Magic's license that Magic never

had the right to receive, much less use. In either case, Sexauer's representation of program rank in the market in a specific time period and for a specific audience demographic was an unauthorized use of an Arbitron Report in violation of Arbitron's copyrights.

21. In response to these apparent unauthorized uses of Arbitron Reports, on or about October 24, 2011 Arbitron sent Magic a cease and desist letter demanding, among other things, that Magic request that All Access take down the September 22, 2011 article. A copy of this letter is attached hereto as Exhibit 11.

22. Upon information and belief, on or about October 26, 2011, Magic requested that All Access correct the article to note that WKMX-FM was not an Arbitron subscriber, which change was made by All Access. A copy of the article with this change is attached hereto as Exhibit 12. In subsequent communications, Magic did not deny that Sexauer had referenced an Arbitron Report in making the statement to All Access.

23. On or about November 1, 2011, Barry Parker, Manager of Magic e-mailed Joanna Douglas of Arbitron to request that Douglas send him copies of Arbitron Reports released during the term of the license agreements. At that time, Parker admitted to still possessing copies of the Arbitron Radio Market Reports for Spring 2008, Fall 2008, Spring 2009 and Fall 2009. A copy of this e-mail is attached hereto as Exhibit 13.

24. On or about November 8, 2011, Arbitron sent Magic a further cease and desist letter by e-mail, demanding again that Magic (i) request that All Access take down the September 22, 2011 article; (ii) release a fuller correction; and (iii) return or destroy any copies of Arbitron Reports that Magic still possessed. A copy of this e-mail is attached hereto as Exhibit 14. Magic did not comply.

DC:693095.2

25.     Upon information and belief, on or about November 9, 2011, Magic made attempts to obtain copies of additional Arbitron Reports from a radio station in Panama City, Florida that was formerly owned by the owner of Magic's other stations.

**FIRST CLAIM FOR RELIEF**
(Copyright Infringement)

26.     Arbitron repeats the allegations contained in paragraphs 1 through 25 above as if fully set forth at length herein.

27.     This is a claim for copyright infringement under 17 U.S.C. § 101, *et seq.*

28.     Magic had a license to use Arbitron Reports and information that expired March 31, 2010. At no time after July 23, 2010 has Magic had a license or any right to access and/or use any Arbitron Reports or information.

29.     Upon information and belief, since July 23, 2010, Magic has continued to use Arbitron Reports and information including but not limited to station rankings and has made public references to such rankings with respect to specific listener demographics and time periods.

30.     Upon information and belief, by virtue of the aforesaid acts, Magic has committed one or more acts in violation of 17 U.S.C. § 501, including but not limited to infringing Arbitron's copyrights in the Arbitron Reports referenced in paragraph 13 above.

31.     On information and belief, Magic's acts have been and continue to be willful and deliberate violations of Arbitron's rights.

32.     Magic has wrongfully profited from its unlawful acts and will continue to do so if not enjoined. Arbitron has no adequate remedy at law to prevent this irreparable harm.

33. By reason of the foregoing, Arbitron is entitled to a preliminary and permanent injunction enjoining and restraining Magic from using or distributing Arbitron's copyrighted works under 17 U.S.C. § 502.

34. In addition, pursuant to 17 U.S.C. §§ 504 and 505, as a result of Magic's copyright infringement Arbitron is entitled to an award of damages in an amount to be determined at trial, but in no event less than $200,000 together with interest thereon as well as its reasonable attorney's fees and costs.

35. The aforesaid acts of copyright infringement by Magic were intentional and willful. As a result of Magic's willful infringement, Arbitron is entitled to an award of enhanced damages pursuant to 17 U.S.C. § 504(c)(2).

## SECOND CLAIM FOR RELIEF
(Breach of Contract)

36. Arbitron repeats the allegations contained in paragraphs 1 through 33 above as if fully set forth at length herein.

37. Arbitron has fulfilled all of its obligations and conditions precedent under all of its agreements with Magic, including but not limited to the License Agreement and all addenda thereto.

38. As set forth above, Magic has materially breached the License Agreement by using Arbitron Data and Reports after the expiration of the term of the License Agreement, which is expressly prohibited by ¶ 7 thereof which provides, in pertinent part, as follows:

> Station agrees to limit its uses of the Arbitron Data and Report(s) to its programming and media selling. Station understands and agrees that this use is limited exclusively to the radio station(s) specified in Section 1 of this Agreement and only for the Term of this Agreement.

39. Paragraph 15(f) of the License Agreement specifically provides that "[t]he provisions governing... confidentiality of the Data and Reports... shall survive the termination of this Agreement."

40. By reason of this foregoing material breach, Arbitron has suffered damages in an amount not less than $150,000, the exact amount to be determined at trial.

WHEREFORE, Arbitron demands judgment against Defendants as follows:

(a)  on Arbitron's first claim for relief, an award of damages in an amount not less than $200,000, plus an award of reasonable attorney's fees and costs, plus an award of enhanced damages;

(b)  an order preliminarily and permanently enjoining Defendants from any further use of any Arbitron Reports;

(c)  on Arbitron's second claim for relief for breach of contract, an award of damages in an amount not less than $150,000, the exact amount to be determined at trial; and

(d)  granting Arbitron such other and further relief as this Court deems just and proper.

DC:693095.2

Dated: November 16, 2011     WINSTON & STRAWN LLP

By: /s/ _____
Alfred R. Fabricant (AF8255)
Lawrence C. Drucker (LD9423)
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
afabricant@winston.com
ldrucker@winston.com

*Of Counsel*

Matthew B. Weinstein
1700 K St. NW
Washington, DC 20006
Telephone: (202) 282-5800
Facsimile: (202) 282-5801
mweinstein@winston.com

James S. Derry
Arbitron Inc.
9705 Patuxent Woods Drive
Columbia, MD 21046
Telephone: (410) 312-8000
Facsimile: (410) 312-8613
james.derry@arbitron.com

DC:693095.2